IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CHEVRON PUERTO RICO, LLC<br><br>   Plaintiff<br><br>      v.<br><br>MODESTO RIVERA-GUZMÁN, et al.,<br><br>   Defendants | CIVIL NO. 10-1040 (JP) |

**OPINION AND ORDER**

Before the Court is Plaintiff Chevron Puerto Rico, LLC's ("Chevron") motion for a temporary restraining order ("TRO") and preliminary injunction (**No. 2**). Plaintiff Chevron, previously known as Texaco Puerto Rico, Inc. and Texaco Puerto Rico, LLC, filed the instant action against Defendants Modesto Rivera-Guzmán ("Rivera"), Margaro Rivera-Guzmán ("Margaro Rivera"), John Doe, and ABC Insurance Company alleging claims for trademark infringement and dilution in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.* ("Lanham Act"); the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801, *et seq.*; breach of contract pursuant to Articles 1044 and 1053 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 2994 and 3017; and lessee dispossession pursuant Article 1459 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 4066. Plaintiff Chevron requests that the Court enter a TRO and preliminary injunction ordering Defendants to: (1) immediately surrender to

CIVIL NO. 10-1040 (JP)          -2-

Chevron the gasoline service station number 355 located at State Roadway 183, Km. 21.9, Las Piedras, Puerto Rico (the "Station") and all tanks and equipment located therein; (2) immediately comply with all other post-termination covenants of the lease and supply agreements between the parties; and (3) refrain from using the Texaco marks. For the reasons stated herein, Plaintiff's motion for preliminary injunction is **GRANTED**. In light of the Court's immediate granting of the preliminary injunction, the Court **FINDS AS MOOT** Plaintiff's request for a TRO.

I.  **FACTUAL BACKGROUND**

On November 6, 2006, Defendant Rivera entered into two agreements with Plaintiff Chevron: (1) a lease agreement ("Lease"); and (2) a supply agreement ("Supply Agreement"). The Lease was for the use of real property located at State Roadway 183, Km. 21.9, Las Piedras, Puerto Rico, for purposes of operating a gasoline service station. The Lease term was for three years, beginning October 1, 2006. Pursuant to its terms, the Lease would convert to a month to month tenancy in the event that the lessee retains possession of the premises following the conclusion of the three year term. The lease provides that Defendant Rivera will pay Plaintiff Chevron a monthly rent of $3,400.00. The Lease states that Rivera is obligated to continually operate the Station in order to sell Texaco branded petroleum products and merchandise. The Lease further provides that

CIVIL NO. 10-1040 (JP)          -3-

Plaintiff Chevron may terminate the Lease in the event that Defendant Rivera fails to operate the Station for a period of seven consecutive days, or otherwise fail to comply with the terms of the Lease.

Under the terms of the Supply Agreement, Defendant Rivera agreed to purchase Texaco gasoline and motor oil for resale at the Station. The Supply Agreement grants Rivera permission to use Texaco trademarks and trade names in connection with the sale of Texaco products. Said agreement also requires Defendant Rivera to comply with all applicable environmental laws and regulations. The Supply Agreement further provides that Plaintiff may suspend the delivery of petroleum products and terminate the agreement in the event that Rivera fails to comply with the terms of the agreement.

Plaintiff alleges that Defendant Rivera has repeatedly breached the terms of Lease and Supply Agreement. In 2006, Plaintiff fell significantly behind on payments to Chevron. As a result, on September 12, 2006, the parties agreed to a payment plan for installments to satisfy Defendant's acknowledged debt at the time of $87,822.00. Plaintiff has attached to the complaint a copy of the payment plan, signed by Defendant Rivera.

Plaintiff further alleges that due to Defendant's ongoing failure to provide payments owed under the agreements, Chevron's General Manager wrote to Defendant on April 9, 2007 seeking payment. On October 30, 2008, Chevron's Credit Manager, Milton Delgado,

CIVIL NO. 10-1040 (JP)           -4-

allegedly wrote to Defendant again in an effort to collect the outstanding debt.  Plaintiff alleges that Defendant Rivera's failure to make payments to Chevron is currently ongoing, and that Defendant now owes $90,503.00 for gasoline and other products delivered and rent.

On December 1, 2008, counsel for Plaintiff sent a letter to Defendant Rivera informing him that, pursuant to the terms of the Lease and Supply Agreement, as well as the PMPA, 15 U.S.C. § 2802, the agreements between the parties were terminated, effective 90 days from the date of the letter.  The termination notice explained that the reason for termination was Defendant's continued failure to make payments owed under the terms of the Lease and Supply Agreements.  The termination notice requested that Plaintiff surrender control of the Station on or before the date of termination.

On October 7, 2009, Plaintiff's counsel sent another letter to Defendant informing him that the agreements between the parties were terminated effective ten days from the date of the letter.  The notice was sent by certified mail and also hand delivered to Defendants.  Both of Plaintiff's termination notices included a summary statement prepared by the Secretary of Energy, as required by the PMPA, 15 U.S.C. § 2804(c)(3)(C).

Plaintiff alleges that to date Defendant has failed to surrender control of the station and has refused to pay the amounts owed.  In

CIVIL NO. 10-1040 (JP)         -5-

addition, Plaintiff argues that due to the termination of the Lease and Supply Agreements, Defendant is no longer entitled to utilize Plaintiff's Texaco trademarks. Plaintiff alleges that Rivera continues to utilize the Texaco marks at the station, thus violating the Lanham Act.

## II. **LEGAL STANDARD FOR A PRELIMINARY INJUNCTION**

The general purpose of injunctive relief is to prevent future acts or omissions of the non-movant that constitute violations of the law or harmful conduct. United States v. Oregon Med. Soc., 343 U.S. 326, 333 (1952). The United States Court of Appeals for the First Circuit has set forth a four part test for trial courts to use when considering whether to grant preliminary injunction requests. Lanier Prof. Serv's, Inc., v. Ricci, 192 F.3d 1 (1st Cir. 1999); Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991). A preliminary injunction is appropriate if: (1) the petitioner has exhibited a likelihood of success on the merits; (2) the petitioner will suffer irreparable injury if the injunction is not granted; (3) such injury outweighs any harm which granting injunctive relief would inflict on the respondent; and (4) the public interest will not be adversely affected by granting the injunction. Narragansett Indian Tribe, 934 F.2d at 5; see, e.g., Aoude v. Mobil Oil Corp., 862 F.2d 890, 892 (1st Cir. 1988); Hypertherm, Inc. v. Precision Products, Inc., 832 F.2d 697, 699 n.2 (1st Cir. 1987). Whether to

CIVIL NO. 10-1040 (JP)          -6-

issue a preliminary injunction depends on balancing equities where the requisite showing for each of the four factors turns, in part, on the strength of the others. <u>Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.</u>, 843 F.2d 600, 611-13 (1st Cir. 1988). Although a hearing is often held prior to entry of a preliminary injunction, a hearing is not an indispensable requirement. <u>Aoude</u>, 862 F.2d at 893.

### III. **ANALYSIS**

#### A.  **Motion for Preliminary Injunction**

Plaintiff Chevron requests that the Court enter a preliminary injunction ordering Defendants to immediately surrender to Chevron the Station, including its underground storage tanks and equipment, and to comply with all post-termination covenants of the Agreements, including discontinuing use of the Texaco marks. The Court shall now consider Plaintiff's arguments in light of First Circuit's preliminary injunction standard.

##### 1.  **Likelihood of Success on the Merits**

###### a.  *Plaintiff's Breach of Contract and PMPA Claims*

Plaintiff argues that it is likely to succeed on the merits of its breach of contract and PMPA claims because Defendant has violated the terms of the Agreements, and because the PMPA requirements for termination of the Agreements and initiation of a civil enforcement action have been met. The PMPA provides, in relevant part,

CIVIL NO. 10-1040 (JP)          -7-

> Any franchisor may terminate any franchise . . . or may fail to renew any franchise relationship [for the following reasons, subject to certain timing and notification requirements] . . .
>
> (A) A failure by the franchisee to pay the franchisor in a timely manner when due all sums to which the franchisor is legally entitled . . .
>
> (B) A failure by the franchisee to exert good faith efforts to carry out the provisions of the franchise . . .
>
> (C) The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable . . .

15 U.S.C. § 2802(b)(2). The PMPA requires written notice to the franchisee ninety days in advance of a termination or non-renewal, although it allows for a lesser period when ninety days is unreasonable under the circumstances. 15 U.S.C. § 2804.

In the instant case, Plaintiff has submitted evidence indicating that Defendant Rivera has failed to pay Chevron rent and amounts owed for gasoline delivered, in an amount of $90,503.00. As such, Plaintiff is likely to succeed in showing that cause for termination of the Agreements exists pursuant to the above-cited subsection (A), which lists failure to pay as a valid ground for termination.

On December 1, 2008, Plaintiff notified Rivera of the termination of the contractual relationship between the parties, effective ninety days following the date of the notice. Plaintiff's notice of termination complied with the requirements of the relevant section of the PMPA, 15 U.S.C. § 2804.

CIVIL NO. 10-1040 (JP)        -8-

In light of the termination of the Lease, Defendants were no longer entitled to utilize the Station, and were therefore required to turn over control to Plaintiff. Plaintiff's evidence indicates that Defendants have not surrendered the Station as required. Under such circumstances, an injunction ordering dispossession is an appropriate remedy. Total Petroleum Puerto Rico Corp. v. T.C. Oil, Corp., No. 09-cv-1105, 2009 WL 702226, at *7 (Pieras, J.). After examining the arguments and evidence presented, the Court finds that Plaintiff has demonstrated a high likelihood of success on the merits of its breach of contract and PMPA claims.

### b.   *Plaintiff's Lanham Act Claims*

Chevron also argues that the facts demonstrate a likelihood of success on the merits of Plaintiff's claims brought pursuant to the Lanham Act, 15 U.S.C. § 1125(a). Section 1125(a) creates a cause of action for false designation of origin, false descriptions, and dilution. To prevail on a trademark claim under Section 1125(a), a plaintiff is generally required to establish that: (1) he uses and thereby owns a mark; (2) the defendant is using the same or a similar mark; and (3) the defendant's use is likely to confuse the public, thereby harming the plaintiff. Doral Pharmamedics, Inc. v. Pharm. Generic Developers, Inc., 148 F. Supp. 2d 127, 137 (D.P.R. 2001). The First Circuit has held that "the third element of the trademark cause of action, likelihood of confusion, is the central issue in

CIVIL NO. 10-1040 (JP)          -9-

finding trademark infringement." <u>International Ass'n of Machinists and Aerospace Workers</u>, 103 F.3d 196, 200 (1st Cir. 1996).

With regard to the first element, Plaintiff is the owner of the trademark "TEXACO" and the color combination, font, and design marks for its gasoline stations. Said marks have been registered in the United States Patent and Trademark Office under Registration Nos. 57,902, 794,947, 1,209,440, 2,259,016, 2,256,757, and related registrations.

With regard to the second element, Defendants' unauthorized use of the mark, Plaintiff has submitted photographs showing that Defendants continue to display the Texaco marks at the Station.

With regard to the third element, likelihood of confusion, the evidence indicates that potential customers have no way of knowing that Defendants' business is anything other than an authorized Texaco station. Plaintiff's photographs show that the Texaco brand name and the Texaco logo displayed prominently. This scenario creates a significant likelihood of confusion among customers. On the basis of the evidence presented, the Court finds that Plaintiff has demonstrated a high likelihood of success on the merits of its Lanham Act claims.

### 2. **Irreparable Harm**

The second factor in the preliminary injunction analysis is whether Plaintiff will suffer irreparable harm if the injunction is

CIVIL NO. 10-1040 (JP)          -10-

not granted.   Narragansett Indian Tribe, 934 F.2d at 5.  An injury will only be considered irreparable if no adequate remedy for the injury exists at law.  See Foxboro Co. v. Arabian Am. Oil Co., 805 F.2d 34, 36 (1st Cir. 1986).  Monetary damages are usually not considered irreparable injuries.   See DeNovellis v. Shalala, 135 F.3d 58, 64 (1st Cir. 1998) (holding that a temporary loss of income which may be recovered later does not generally constitute irreparable injury).  It is not required that a plaintiff establish that denial of injunctive relief would be fatal to its business; it is sufficient for a plaintiff to show that injury is not accurately measurable, given that irreparable harm is a natural sequel.  See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 18 (1st Cir. 1996) (internal citations omitted).

Plaintiff contends that Defendant's failure to maintain continuous availability of fuel at the Station is harming Plaintiff's market share and customer goodwill in Puerto Rico.  Plaintiff alleges that its market presence in the region has been developed over the course of nearly one hundred years, since 1911.  A loss of customer loyalty as a result of Defendants' actions could entail more than a temporary financial loss.   Rather, Plaintiff risks an ongoing reduction in market share due to consumers' opinion that the Station is not a reliable vendor of petroleum products.

CIVIL NO. 10-1040 (JP)          -11-

Plaintiff also argues that, due to the termination of the Lease and Supply Agreement, Chevron can no longer exercise a contractual right to monitoring and control of the underground tanks associated with the Station. This scenario exposes Chevron to risks of environmental damage and liability in the event that Defendants neglect to maintain the tanks properly. Considering these risks and the significant potential harm due to loss of market share, the Court finds that Plaintiff has adequately demonstrated that it will suffer irreparable harm in the absence of a preliminary injunction.

### 3. Balance of Hardships

The third factor in the analysis for a preliminary injunction requires Plaintiff to show that the irreparable harm that Plaintiff will suffer in the absence of the entry of a preliminary injunction outweighs any harm which granting injunctive relief would inflict on Defendant. Narragansett Indian Tribe, 934 F.2d at 5.

In the instant case, the potential hardship to Defendants that would result from entry of a preliminary injunction is that Defendants would no longer be able to maintain control of the Station. This hardship offers a weak counterbalance to the ongoing irreparable injury being suffered by Plaintiff. The evidence indicates that Defendants do not have a right to continue their business operations following the termination of the Agreements. As such, Defendants' potential losses from discontinuation of control

CIVIL NO. 10-1040 (JP)          -12-

of the Station are a result of Defendant Rivera's own breaches of contract. Accordingly, the Court finds that the balance of hardships weighs strongly in favor of Plaintiff.

### 4.   Public Interest

The fourth and final factor in the preliminary injunction analysis requires the Court to consider whether the public interest will be adversely affected if the injunction is granted. Id. at 5. Here, the public interest is harmed when consumers are misled as to the source of the products being offered for sale at the retail store located in the Station. In addition, the environmental risks from unmonitored petroleum storage tanks also negatively affect the public interest. Finally, Defendants' failure to reliably offer gasoline for sale harms the public interest because motorists in the area are unable to purchase gasoline from the Station. The Court notes that these risks are exacerbated by the fact that recently other service stations in Puerto Rico have similarly ceased operations due to the franchisee's noncompliance with contractual terms. See, e.g., Total Petroleum Puerto Rico Corp., 2009 WL 702226 (Pieras, J.). In light of the potential harm to consumers and the public, the Court finds that the fourth factor further supports the entry of a preliminary injunction.

CIVIL NO. 10-1040 (JP)          -13-

**IV.  CONCLUSION**

In conclusion, the Court **GRANTS** Plaintiff's motion for a preliminary injunction. Defendants are hereby **ORDERED** to: (1) immediately surrender to Chevron the Station, including its underground storage tanks and equipment; (2) immediately comply with all other post-termination covenants of the Agreements; and (3) refrain from using the Texaco marks.  Plaintiff **SHALL** serve a copy of the complaint and this Opinion and Order upon Defendants, and **SHALL** file proof of service with the Court, on or before **February 8, 2010.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of January, 2010.

                                        s/Jaime Pieras, Jr.
                                          JAIME PIERAS, JR.
                               U.S. SENIOR DISTRICT JUDGE